# FEDERAL PUBLIC DEFENDER

Southern District of Florida
www.fpdsouthflorida.org

**Hector A. Dopico**
**Federal Public Defender**

**Helaine B. Batoff**
**Chief Assistant**

Location: <u>Miami</u>

<u>Miami:</u>

**Abigail Becker**
**Christian Dunham**
**R. D'Arsey Houlihan**
**Bunmi Lomax**
    **Supervising Attorneys**

Helene Barthelemy
Sowmya Bharathi
Elizabeth Blair
Eboni Blenman
Micki Bloom
Anshu Budhrani
Paul Carson
Michael Caruso
Eric Cohen
Tracy Dreispul
MaeAnn Dunker
Daniel L. Ecarius
Sogol Ghomeshi
Jean-Pierre Gilbert
Alexandra Hoffman
Srilekha Jayanthi
Ashley Kay
Evan Kuhl
Ian McDonald
Kate Mollison
Leticia Olivera
Ta'Ronce Stowes
Marisa Taney
Kate Taylor
Victor Van Dyke

<u>Ft. Lauderdale:</u>

**Robert N. Berube**
    **Branch Supervisor**
**Bernardo Lopez,**
    **Supervising Attorney**

Andrew Adler
Huda Ajlani-Macri
Janice Bergmann
Brenda G. Bryn
Allari Dominguez
Margaret Y. Foldes
Sara Kane
Jan C. Smith
Wesley Wallace

<u>West Palm Beach:</u>

**Peter Birch,**
    **Branch Supervisor**

Robert E. Adler
Lori  Barrist
Scott Berry
Caroline McCrae
Kristy Militello

<u>Fort Pierce:</u>

Kafahni Nkrumah
Renee Sihvola

November 18, 2025

The Honorable Jill Pryor
The Honorable Robert Luck
The Honorable Virginia Covington
United States Court of Appeals for the Eleventh Circuit
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

Re:      *United States v. Gilbert*, No. 20-12010
         Oral Argument Heard September 18, 2025
         Letter of Supplemental Authority, Fed. R. App. P. 28(j)

Dear Judge Pryor, Judge Luck, and Judge Covington:

In *United States v. Miller*, __ F.4th __, No. 23-13069, 2025 WL 3096637, at *4 n.7 (11th Cir. 2025), this Court held that Fla. Stat. § 893.03(2)(a)(4) is *not* divisible by type of cocaine.[1] The Court explained:

> [Section 893.03(2)(a)(4)] lists multiple substances that qualify as "cocaine" (including ecgonine, a stereoisomer of cocaine, a stereoisomer of ecgonine, a derivative of cocaine, or a derivative of ecgonine). We thus also must consider whether Florida law is further divisible by type of cocaine. *We conclude that it is not.* Section 893.03(2)(a)(4) sets forth a single statutory definition of cocaine [that] includes each of the listed substances. This understanding is consistent with decisions from the Florida state courts. . . . [W]e conclude that *§ 893.03(2)(a)(4) sets forth alternative means of committing a*

---

[1] As noted in the government's letter (ECF No. 84), the Court also held that Fla. Stat. § 893.13(1)(a) is divisible by drug type. *Miller*, 2025 WL 3096637, at *4.

| **Miami** | **Ft. Lauderdale** | **West Palm Beach** | **Ft. Pierce** |
|---|---|---|---|
| 150 West Flagler Street | One East Broward Boulevard | 250 South Australian Avenue | 109 North 2nd Street |
| Suite 1700 | Suite 1100 | Suite 400 | Ft. Pierce, FL 34950 |
| Miami, FL 33130-1555 | Ft. Lauderdale, FL 33301-1842 | West Palm Beach, FL 33401-5040 | Tel: (772) 489-2123 |
| Tel: (305) 530-7000 | Tel: (954) 356-7436 | Tel: (561) 833-6288 | Fax: (772) 489-3997 |
| Fax: (305) 536-4559 | Fax: (954) 356-7556 | Fax: (561) 247-7094 | |

> *cocaine-related offense and is not further divisible by type of cocaine.*

*Id.* (emphasis added) (citations and internal quotation marks omitted).

Having held that Florida's cocaine definition is indivisible, the Court went on to vacate Mr. Miller's ACCA-enhanced sentence because, at the time of Mr. Miller's Florida cocaine-related priors, Florida's definition of cocaine included ioflupane, while the Federal definition did not. *Id.* at \*10–11.

Here, as argued at Oral Argument, since Fla. Stat. § 893.03(2)(a)(4) is indivisible, and because it includes substances that 21 U.S.C. §802(17)(D) does not— namely non-geometric, non-optical stereoisomers of cocaine—the Florida statute is categorically overbroad.

Respectfully submitted,

HECTOR A. DOPICO
FEDERAL PUBLIC DEFENDER

*/s/ Kate Taylor*
Kate Taylor
Assistant Federal Public Defender

cc: AUSA Alexandra Bailey

2025 WL 3096637
Only the Westlaw citation is currently available.
United States Court of Appeals, Eleventh Circuit.

UNITED STATES of America, Plaintiff-Appellee,
v.
Jerome MILLER, Jr., Defendant-Appellant.

No. 23-13069
|
Filed: 11/06/2025

**Synopsis**
**Background:** Defendant pled guilty in the United States
District Court for the Middle District of Florida, No. 8:22-
cr-00208-VMC-AAS-1, Virginia M. Hernandez Covington,
J., to being felon in possession of firearm and ammunition,
and he appealed.

**Holdings:** The Court of Appeals, Jill Pryor, Circuit Judge,
held that:

categorical approach applied in determining whether
defendant's Florida convictions for delivering cocaine
qualified as "serious drug offenses" under Armed Career
Criminal Act (ACCA);

as matter of first impression, when determining whether
earlier state drug conviction qualifies as serious drug offense
under ACCA and relevant state law changes during interval
between commission and conviction of offense, federal court
must consider whether, under state law, change would apply
to offense; and

defendant's Florida convictions for delivering cocaine did not
categorically qualify as "serious drug offenses" under ACCA.

Vacated and remanded.

**Procedural Posture(s):** Appellate Review; Sentencing or
Penalty Phase Motion or Objection.

Appeal from the United States District Court for the Middle
District of Florida, D.C. Docket No. 8:22-cr-00208-VMC-
AAS-1

**Attorneys and Law Firms**

Holly Lynn Gershow, Julia Kapusta, U.S. Attorney Service
- Middle District of Florida, U.S. Attorney, DOJ-USAO,
Appellate Division, Tampa, FL, Plaintiff-Appellee

Brian Shrader, Shrader Mendez & O'Connell, Tampa, FL, for
Defendant-Appellant.

Before Jordan, Jill Pryor, and Hull, Circuit Judges.

**Opinion**

Jill Pryor, Circuit Judge:

**\*1** Appellant Jerome Miller, Jr., appeals the 180-month
sentence imposed after he pleaded guilty to one count of being
a felon in possession of a firearm and ammunition, in violation
of 18 U.S.C. § 922(g)(1). At sentencing, the district court
determined that he had three prior convictions for serious drug
offenses and imposed an enhanced sentence under the Armed
Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e).

On appeal, Miller challenges the ACCA enhancement. He
argues that the district court erred in treating his three Florida
state convictions for delivery of cocaine as serious drug
offenses under ACCA because the Florida law under which
he was convicted defined cocaine more broadly than federal
law did. We agree. We therefore vacate Miller's sentence and
remand to the district court for resentencing.

**I. FACTUAL BACKGROUND**

In February 2022, Miller, together with two other individuals,
entered a victim's home, pointed a firearm at him, and
demanded money and the victim's truck. Miller and the others
took the victim's keys, forced him to sign over the title
to the truck, and drove away in the truck. Two days later,
law enforcement officers spotted Miller driving the stolen
truck. They stopped and arrested him. When officers searched
Miller, they found ammunition in his pocket. When they
searched the truck, they found a firearm in its center console.

Based on the evidence found in the searches, a grand jury
charged Miller with being a felon in possession of a firearm
and ammunition, in violation of 18 U.S.C. § 922(g)(1). [1] At
that time, the statutory maximum sentence for possession
of a firearm or ammunition by a felon was ten years'

imprisonment.[2] *See* 18 U.S.C. § 924(a)(2) (2022). The government maintained that Miller faced an enhanced penalty range of 15 years to life under ACCA because he possessed the firearm and ammunition after sustaining three convictions under state law for delivering cocaine. *See id.* § 924(e). Miller pleaded guilty but objected to the ACCA enhancement.

Before sentencing, a probation officer prepared a presentence investigation report ("PSR"). The PSR concluded that the ACCA enhancement applied because Miller's three Florida convictions for delivering cocaine qualified as serious drug offenses. The PSR briefly described the three offenses. On February 20, 2017, Miller sold 0.1 grams of cocaine to a confidential informant for $20. One week later, on February 27, 2017, he sold 0.5 grams of cocaine to a confidential informant for $20. And on March 24, 2017, he sold 0.2 grams of cocaine to a confidential informant for $20. The PSR reported that for this conduct Miller was charged in three separate cases in Florida state court with the unlawful delivery of a controlled substance in violation of Florida law. *See* Fla. Stat. § 893.13(1)(a). In August 2017, he entered a guilty plea in each case and was sentenced to a total of 60 months' imprisonment with the sentences to run concurrently.

**\*2** After applying the ACCA enhancement, the PSR calculated Miller's Sentencing Guidelines range as 135 to 168 months' imprisonment. Because the enhancement made the statutory mandatory minimum sentence 15 years, longer than the maximum of this range, the PSR adjusted the guidelines range to 180 months (15 years). *See* U.S. Sent'g Guidelines Manual § 5G1.1(b) ("Where a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence.").

Miller objected, arguing that his Florida convictions for delivering cocaine did not qualify as serious drug offenses for ACCA purposes. He pointed out that, when he committed these offenses, Florida's definition of cocaine included ioflupane, which the federal definition of cocaine excluded. Because Florida law defined cocaine more broadly than federal law, he argued that, under the categorical approach federal courts use to decide whether state offenses qualify as ACCA predicates, his Florida convictions did not qualify as serious drug offenses.[3]

The government disagreed, arguing that Miller's convictions for delivering cocaine qualified as serious drug offenses. By the time Miller pleaded guilty in state court, Florida had removed ioflupane from its definition of cocaine. Thus, the government argued, there was no mismatch between Florida and federal law, and Miller's convictions qualified for the ACCA enhancement.

The district court overruled Miller's objection. Applying the categorical approach, the court concluded that his Florida cocaine convictions qualified as serious drug offenses because, when he was convicted, there was no mismatch between the definition of cocaine under Florida law and federal law. After applying the ACCA enhancement, the court imposed a sentence of 180 months.

This is Miller's appeal.

## II. STANDARD OF REVIEW

We review *de novo* whether a conviction qualifies as a serious drug offense under ACCA. *United States v. White*, 837 F.3d 1225, 1228 (11th Cir. 2016).

## III. DISCUSSION

Federal law prohibits those who have been convicted of a felony offense from owning or possessing a firearm or ammunition. *See* 18 U.S.C. § 922(g)(1). A defendant who violates § 922(g) faces an enhanced penalty range under ACCA if he "has three previous convictions ... for a violent felony or a serious drug offense, or both, committed on occasions different from one another." *Id.* § 924(e)(1).

The Supreme Court has explained that "Congress enacted ACCA to address the special danger posed by the eponymous 'armed career criminal.' " *Wooden v. United States*, 595 U.S. 360, 375, 142 S.Ct. 1063, 212 L.Ed.2d 187 (2022) (citation modified). "The theory of the statute is that those who commit a large number of fairly serious crimes as their means of livelihood are especially likely to inflict grave harm when in possession of a firearm." *Id.* (citation modified). ACCA "targets a particular subset of offenders"—those who have at least three times been convicted of violent felonies or serious drug offenses—and subjects them to a higher penalty range when they possess a firearm or ammunition. *Id.* (citation modified).

The question before us is whether Miller's three Florida convictions for delivering cocaine qualify as serious drug offenses under ACCA. We hold that they do not.

### A. Determining Whether There Is a Mismatch Between State and Federal Law Under the Categorical Approach

**\*3** Under ACCA, a serious drug offense includes "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. [§] 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii). Therefore, a state offense qualifies as a serious drug offense when it meets three requirements: (1) it "involve[s] certain conduct: 'manufacturing, distributing, or possessing with intent to manufacture or distribute' "; (2) that conduct "involve[s] 'a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. § 802))' "; and (3) the conduct involving the controlled substance is "punishable by a maximum term of imprisonment of at least ten years." *United States v. Jackson*, 55 F.4th 846, 854 (11th Cir. 2022) (citation modified), *aff'd sub nom.*, *Brown v. United States,* 602 U.S. 101, 123, 144 S.Ct. 1195, 218 L.Ed.2d 583 (2024).

This appeal turns on the second part of the definition of a serious drug offense: whether the conduct involves a controlled substance as defined in § 102 of the Controlled Substances Act. [4] In assessing this requirement, we apply the categorical approach. *See Shular v. United States*, 589 U.S. 154, 157, 140 S.Ct. 779, 206 L.Ed.2d 81 (2020). With the categorical approach, a court "look[s] only to the state offense's elements, not the facts of the case." *Id.* at 160, 140 S.Ct. 779.

*1. Whether There Is a Mismatch Here Between Federal and State Law—Making the ACCA Enhancement Inapplicable Under the Categorical Approach—Depends on When We Compare Them.*

Under the categorical approach, "a state conviction cannot serve as an ACCA predicate offense if the state law under which the conviction occurred is categorically broader—that is, if it punishes more conduct—than ACCA's definition of a 'serious drug offense.' " *Jackson*, 55 F.4th at 850. "[I]f there is conduct that would violate the state law but fall outside of ACCA's serious drug offense definition, the state law cannot serve as a predicate offense—regardless of the actual conduct that resulted in the defendant's conviction."

*Id.* (citation modified). In other words, a state conviction "qualifies as a serious drug offense only if the state statute under which the defendant was convicted defines the offense in the same way as, or more narrowly than, the ACCA's definition of a serious drug offense." *United States v. Conage,* 976 F.3d 1244, 1250 (11th Cir. 2020).

Our task, then, is to compare the Florida law under which Miller was convicted for his cocaine delivery offenses with ACCA's definition of a serious drug offense to see whether the state offense is categorically broader than a serious drug offense under federal law. In making this comparison, we begin with federal law—here, the definition of "controlled substance." ACCA defines controlled substance by reference to § 102 of the Controlled Substances Act. *See* 18 U.S.C. § 924(e)(2)(A)(ii). Section 102, in turn, defines a "controlled substance" to include any substance on the federal drug schedules. 21 U.S.C. § 802(6); *see id.* § 812. The "schedules are not static," as "Congress has authorized the Attorney General to remove drugs from (and add drugs to) those schedules." *Jackson*, 55 F.4th at 855; *see* 21 U.S.C. § 811(a).

The federal drug schedules set forth a long list of substances that qualify as controlled substances under federal law. *See* 21 U.S.C. § 812(c). [5] The schedules provide, in relevant part, that "[u]nless specifically excepted," the following qualify as controlled substances: "cocaine, its salts, optical and geometric isomers, and salts of isomers," as well as "ecgonine, its derivatives, their salts, isomers, and salts of isomers." *Id.* § 812(c), Schedule II(a)(4).

**\*4** Before 2015, this definition covered ioflupane, which "is the active pharmaceutical ingredient in a drug used to diagnose patients who are suspected to have Parkinson's disease." *Brown*, 602 U.S. at 108, 144 S.Ct. 1195. We know that ioflupane was covered by the federal drug schedules because it is "derived from cocaine, a schedule II substance, via ecgonine" and was not specifically excepted. Schedules of Controlled Substances: Removal of Ioflupane from Schedule II of the Controlled Substances Act, 80 Fed. Reg. 54715, 54716 (Sept. 11, 2015); *see* 21 U.S.C. § 812(c), Schedule II(a)(4). In 2015, after a scientific and medical evaluation of ioflupane, the administrator of the Drug Enforcement Administration (DEA), through final rulemaking, modified the federal schedules to remove ioflupane. [6] *See* 80 Fed. Reg. at 54717. As a result, even though the federal schedules continue to cover cocaine and ecgonine as well as their "salts, isomers, derivatives and salts of isomers and derivatives," they now include an express exception stating that the

schedules "shall not include ... ioflupane." 21 C.F.R. § 1308.12(b)(4).

Next, we examine the applicable state law to be compared with federal law. Florida law provides that "a person may not sell, manufacture, or deliver, or possess with intent to sell, manufacture, or deliver, a controlled substance." Fla. Stat. § 893.13(1)(a). A controlled substance is defined as "any substance named or described in Schedules I-V of [§] 893.03." *Id.* § 893.02(4).

As part of our inquiry, we must decide whether § 893.13(1)(a) is divisible as to drug type. We must determine whether the list of controlled substances sets forth alternative elements —effectively creating a distinct offense for each type of substance—or various factual means of committing a single offense. *See Mathis v. United States*, 579 U.S. 500, 505, 136 S.Ct. 2243, 195 L.Ed.2d 604 (2016). We conclude under Florida law the drug type involved in the offense is an element and thus § 893.13(1)(a) is divisible as to drug type. *See Guillen v. U.S. Att'y Gen.*, 910 F.3d 1174, 1181–85 (11th Cir. 2018) (holding that parallel provision in § 893.13(6) prohibiting possession of a "controlled substance" is divisible as to drug type because the identity of the type of substance is an element of the offense under Florida law). Accordingly, we treat Miller's Florida convictions under § 893.13(1) as involving cocaine, not any controlled substance. And when we apply the categorical approach, we compare Florida's definition of cocaine to ACCA's serious drug offense definition. *See Mathis*, 579 U.S. at 506, 136 S.Ct. 2243; *Guillen*, 910 F.3d at 1185. Accordingly, we now look at how Florida defines cocaine.

Florida law generally defines cocaine to include: "[c]ocaine or ecgonine, including any of their stereoisomers, and any salt, compound, derivative, or preparation of cocaine or ecgonine." Fla. Stat. § 893.03(2)(a)(4) (2016). Before July 2017, this provision did not include any carveout to permit conduct involving ioflupane. But like the federal government, Florida has changed its definition of cocaine over time. In July 2017, the Florida legislature legalized ioflupane, adding to the statutory definition of cocaine that the prohibited "substances shall not include ioflupane." *See* 2017 Fla. Leg. Sess. Laws Serv. ch. 2017-110 § 1. [7]

**\*5** As we explained above, to determine whether Miller's Florida cocaine convictions qualify as serious drug offenses, we must compare the definition of cocaine set forth in Florida law to the federal drug schedules. Whether there is a mismatch between federal and state law depends on the point in time when we compare the relevant laws. If we compare the definitions of cocaine in place in February and March 2017, when Miller *committed* the state offenses, there is a mismatch because the federal schedules no longer treated ioflupane as a type of cocaine, while Florida law did. But if we take the district court's approach and compare the definitions of cocaine in place when Miller *was convicted* of the state offenses, August 2017, there is no mismatch because both federal law and Florida law no longer treated ioflupane as cocaine. [8]

*2. Supreme Court Precedent Confirms that We Look to a State Law's Saving Provision to Determine Which Version of the State Law to Use When, Like Here, State Law Changes During the Time Between When the Defendant Commits the Offense and is Convicted.*

Miller contends that we should look to version of state law in place when he committed each state offense. The government now agrees. But this is a question of law, so we do not simply take the parties' word for it. *See United States v. Lee.*, 586 F.3d 859, 866 (11th Cir. 2009) (recognizing that the government's concession that a defendant's conviction did not qualify as an ACCA predicate "is not dispositive"). To decide which version of Florida law applies here, we consult two Supreme Court decisions for guidance. *See McNeill v. United States*, 563 U.S. 816, 818, 131 S.Ct. 2218, 180 L.Ed.2d 35 (2011); *Brown*, 602 U.S. at 106, 144 S.Ct. 1195.

We begin with *McNeill*, where the Court confronted the question of which version of state law to consider when applying the categorical approach to determine whether an earlier state drug conviction qualified as a serious drug offense. In 2008, Clifton McNeill pleaded guilty to being a felon in possession of a firearm. *McNeill*, 563 U.S. at 818, 131 S.Ct. 2218. At sentencing, the district court considered whether to apply an ACCA enhancement. *Id.* McNeill conceded that he had two convictions for violent felonies. *Id.* But for the enhancement to apply, he needed to have a third conviction for a violent felony or serious drug offense.

McNeill argued that none of his six previous North Carolina convictions for trafficking cocaine qualified as a serious drug offense because each offense carried a maximum sentence of less than ten years. *Id.*; *see* 18 U.S.C. § 924(e)(2)(A)(ii) (stating that a serious drug offense is one "for which a maximum term of imprisonment of ten years or more

is prescribed by law"). McNeill did not dispute that when he committed these crimes between October 1991 and September 1994, each carried a ten-year maximum sentence. *McNeill*, 563 U.S. at 818, 824, 131 S.Ct. 2218. But he pointed out that in October 1994, about a month after he committed the final cocaine trafficking offense, North Carolina reduced the maximum sentence for trafficking cocaine to well below ten years. *Id.* at 818, 131 S.Ct. 2218. McNeill argued that the sentencing court had to look to the penalties under *current* state law to determine whether a conviction qualified as a serious drug offense. *Id.*

**\*6** The district court disagreed. *Id.* Rather than look to the penalty range under North Carolina's current law, the court considered the "maximum sentence that applied to McNeill's drug offenses at the time he committed them." *Id.* at 819, 131 S.Ct. 2218. Because a ten-year maximum sentence applied at the time each offense was committed, the court applied an ACCA enhancement. *Id.*

The Supreme Court affirmed but took a somewhat different approach. It explained that ACCA's plain text "requires a federal sentencing court to consult the maximum sentence applicable to a defendant's previous drug offense *at the time of his conviction for that offense*." *Id.* at 820, 131 S.Ct. 2218 (emphasis added). To answer the "backward-looking question" of whether an earlier conviction qualifies as a serious drug offense, a court must "consult the law that applied at the time of that conviction." *Id.* The Supreme Court emphasized that "ACCA is concerned with convictions that have already occurred." *Id.* And so, whether a "prior conviction was for an offense involving manufacturing, distributing, or possessing with intent to manufacture or distribute[ ] a controlled substance can only be answered by reference to the law under which the defendant was convicted." *Id.* (citation modified). Similarly, the maximum sentence that could be imposed for an offense had to be "determined according to the law" under which the defendant was convicted. *Id.* The Court concluded that each of McNeill's state convictions qualified as a serious drug offense because, under the version of state law that applied to each conviction, he faced a maximum sentence of ten years. *Id.* at 824, 131 S.Ct. 2218.

To explain how it reached this conclusion, the Court divided McNeill's North Carolina cocaine convictions into two groups. First, it addressed his five convictions for selling cocaine that arose from offenses that McNeill committed in October 1991 and February 1992. *Id.* It explained that

"[a]t the time of McNeill's November 1992 conviction and sentencing" for these five offenses, "North Carolina law dictated that the maximum sentence for selling cocaine in 1991 and the maximum sentence for possessing cocaine with intent to sell in 1992 was 10 years in prison." *Id.* As a result, these convictions qualified as serious drug offenses. *Id.*

Second, the Court considered whether McNeill's remaining North Carolina conviction for possessing cocaine with intent to sell qualified as a serious drug offense. The Court analyzed this conviction separately because, in the time between when McNeill committed this offense in September 1994 and when he pleaded guilty in April 1995, North Carolina amended its law to reduce the maximum penalty for the offense. *Id.* Given the reduced maximum penalty, a conviction under the new law would not qualify as a serious drug offense.

In considering whether McNeill's sixth conviction qualified, the Court did not simply apply the penalty range that was on the books in North Carolina in April 1995 when McNeill was convicted of the offense. Instead, because state law had changed between when McNeill committed the offense and when he was convicted, it undertook a more nuanced analysis. When the Court reviewed the North Carolina law applicable to McNeill's offense at the time of his conviction, it found that the legislation reducing the penalty range applied only to offenses "occurring on or after" the legislation's effective date of October 1, 1994. *Id.* at 824, 131 S.Ct. 2218. The new law specified that for offenses occurring before the effective date, the amendment reducing the maximum sentence would not apply. *Id.* As a result, even though McNeill was convicted in April 1995—after the amendment's effective date—the Court concluded that his offense carried a maximum penalty of ten years because it was committed in September of 1994. The Court therefore concluded that "McNeill's 1995 conviction was also for a 'serious drug offense.'" *Id.* The Court's analysis of this last offense showed that, despite its broad language referring to applicable state law "at the time of the defendant's state conviction," when state law governing the offense changed between when the defendant committed the offense and when he was convicted, a federal court must follow state law on which version applied to the offense. *Id.* at 824–25, 131 S.Ct. 2218.

**\*7** In *Brown*, the Court again grappled with the issue of which version of changing law to consult when applying the categorical approach. 602 U.S. at 106, 144 S.Ct. 1195. The Supreme Court reviewed two consolidated cases in which defendants received ACCA enhancements. In each

case, the defendant argued that at least one of his prior state convictions no longer qualified as a serious drug offense because, based on changes to the relevant drug schedules, the federal schedules no longer matched the applicable state law. In the first case, Justin Rashaad Brown argued that his Pennsylvania convictions for possessing marijuana with intent to distribute did not qualify as serious drug offenses, but the Third Circuit affirmed the application of the ACCA enhancement. *Id.* at 106–07, 144 S.Ct. 1195. In the second case, Eugene Jackson argued that his Florida convictions for possession and distribution of cocaine did not qualify as serious drug offenses, but our Court affirmed the application of the ACCA enhancement. *Id.* at 107–08, 144 S.Ct. 1195.

In these cases, the Supreme Court considered "whether a state crime constitutes a 'serious drug offense' if it involved a drug that was on the federal schedules when the defendant possessed or trafficked in it but was later removed." *Id.* at 106, 144 S.Ct. 1195. To answer this question, the Court had to decide which version of the federal drug schedules to consult when determining whether a state conviction qualifies as a serious drug offense. It primarily considered two approaches: consulting the federal schedules in effect (1) "when the defendant committed the state crime"[9] or (2) "when the defendant violate[d] the federal felon-in-possession statute." *Id.* at 108–09, 144 S.Ct. 1195.[10]

The Court adopted the first approach, concluding that courts should look to the version of the federal schedules in place "when the state drug offense was committed," rather than the version in place when the federal firearm offense was committed. *Id.* at 119, 144 S.Ct. 1195; *see also id.* at 120, 144 S.Ct. 1195 (stating that a sentencing court should consult the federal schedules in place "when the state crimes occurred"). The Court reached this conclusion despite acknowledging that the operative language in § 924(e)(2)(A)(ii)—defining a serious drug offense as an offense under state law involving "a controlled substance (as defined in section 102 of the Controlled Substances Act)"—"standing alone" did "not definitively answer" the question. *Id.* at 111, 144 S.Ct. 1195 (citation modified).

The Court reasoned that § 924(e)(2)(A)(ii), when read in context with other ACCA provisions, supported using the federal schedules in effect when the state offense was committed instead of when the federal offense was committed. In its analysis of statutory context, the Court relied on the organization of ACCA's definition of "serious drug offense." It explained that the definition had two parts.

One part, which we have discussed here, addresses when an earlier *state* conviction qualifies as a serious drug offense. *Id.* at 112, 144 S.Ct. 1195 (citing 18 U.S.C. § 924(e)(2)(A)(ii)). The second part, which we have not yet discussed, addresses when an earlier *federal* conviction qualifies as a serious drug offense. This part of the definition says that "offenses under the Controlled Substances Act" may qualify as serious drug offenses. *Id.* (citing 18 U.S.C. § 924(e)(2)(A)(i)).

**\*8** The Court explained how to decide whether an earlier federal conviction qualifies as a serious drug offense. To make this determination, a sentencing court consults the judgment from the earlier federal criminal case to see whether the defendant was convicted of a serious drug offense. *Id.* Under this approach, "a later change in a federal drug schedule" has no effect on whether a previous federal conviction qualifies as a serious drug offense. *Id.* The Court thus recognized that when a defendant's previous conviction is for a federal drug offense, a court consults the version of the federal drug schedules in effect at the time of the earlier drug offense (not the schedules in effect at the time of the federal firearm offense). The Court determined that it "would be unnatural" and "very strange" to adopt a different approach when the defendant's previous drug conviction arose under state, not federal, law. *Id.* at 113, 144 S.Ct. 1195. Based on this reasoning, it rejected the argument that in deciding whether a state offense qualifies as a serious drug offense, a sentencing court should look to the drug schedules in effect at the time of the federal firearm offense.

The Supreme Court further concluded that using the drug schedules in place at the time of the state drug offense rather than the federal firearm offense "best fulfill[ed] ACCA's statutory objectives." *Id.* It explained that ACCA's purpose is "to single out offenses of a certain level of seriousness." *Id.* (citation modified). The Court reasoned that "[a] defendant's history of criminal activity does not cease to exist merely because the crime was later redefined." *Id.* at 113–14, 144 S.Ct. 1195 (citation modified). A conviction for a drug offense that was "punishable by 10 years' imprisonment augurs a risk of future dangerousness" even if the drug is later removed from the federal schedules. *Id.* at 114, 144 S.Ct. 1195. Thus, the appropriate inquiry is "whether a prior offense met ACCA's definition of seriousness—and thus suggested future danger—at the time it was committed." *Id.*

The Court pointed out that comparing the drug schedules in effect when the state offense was committed was consistent with its earlier decision in *McNeill*. It explained

that *McNeill* recognized that ACCA requires a "backward-looking examination" of previous convictions "that bear on dangerousness." *Id.* at 111, 144 S.Ct. 1195 (quoting *McNeill, 563 U.S. at 820, 131 S.Ct. 2218*). Given the nature of this inquiry, the Court reasoned that it "makes sense to ask ... whether a prior offense met ACCA's definition of seriousness—and thus suggested future danger—at the time it was committed." *Id.* at 114, 144 S.Ct. 1195. Looking to *McNeill*, the Court concluded that to decide whether a prior offense met ACCA's definition of seriousness, a court should consider the drug schedules in effect when the underlying state offense was committed. *See id.* at 114–15, 144 S.Ct. 1195.

Given the Court's conclusion that a sentencing court must consult the version of the federal drug schedules in effect when the defendant committed his underlying state offense, it affirmed the district courts' application of ACCA enhancements for both Brown and Jackson. *Id.* at 123, 144 S.Ct. 1195.

With the Court's decisions in *McNeill* and *Brown* in mind, we must decide the issue here: what happens when there is a change in state law between the defendant's commission of the state offense and his conviction? At first blush, the Court's decisions in *McNeill* and *Brown* seem to point in opposite directions. In *McNeill*, the Court directed that a sentencing court should "consult the law that applied at the time of [the state] *conviction*." 563 U.S. at 820, 131 S.Ct. 2218 (emphasis added). But in *Brown*, the Court said that a sentencing court should consult the schedules that applied "when the state drug offense *was committed*." 602 U.S. at 119, 144 S.Ct. 1195 (emphasis added).

Having parsed both opinions, we conclude that they can be read in harmony. Both *McNeill* and *Brown* primarily addressed whether, when applying the categorical approach, a sentencing court should consider changes in the law that occurred after the defendant had committed and been convicted of the predicate offense. In each case, the Supreme Court's answer was "no"—it resoundingly rejected the defendants' positions to the contrary. Only in *McNeill* did the Court address the narrower question we confront here.

**\*9** The Court addressed this question in *McNeill* when it explained why McNeill's sixth cocaine conviction qualified as a serious drug offense. To review, McNeill committed this offense in September 1994—when North Carolina law applied a ten-year statutory maximum penalty to the offense. *McNeill, 563 U.S. at 824, 131 S.Ct. 2218*. But by the time

he pleaded guilty and was sentenced in April 1995, the state had reduced the statutory maximum. *Id.* Even though North Carolina's new law reducing the penalty range for cocaine offenses was in effect when McNeill was convicted for the sixth offense, the Court did not apply the new penalty range when considering whether this conviction qualified as an ACCA predicate. *Id.* Instead, it looked to a saving clause in the North Carolina legislation that reduced the penalty range for cocaine offenses. *See id.* The saving clause clarified that the new penalty range applied only to offenses committed after the statute went into effect.[11] *See id.* (explaining that according to the new legislation, "[p]rosecutions for, or sentences based on, offenses occurring before the effective date of this act are controlled by the statutes that would be applicable to those prosecutions or sentences but for the provisions of this act" (citation modified)). Notably, in applying the categorical approach when the state law changed in the period between the commission of and conviction for the state law offense, the Court looked to state law and the applicable saving clause to determine what penalty range the state had applied to the conviction.

We acknowledge that this analysis seems to conflict with the Court's statements in *Brown* in which it appeared to adopt a bright-line rule that a sentencing court consult the federal schedules in effect when the defendant *committed* the predicate state offense. *See 602 U.S. at 119, 144 S.Ct. 1195*. But, as we explained above, in *Brown*, the relevant drug schedules did not change between when the defendant committed the state offense and when he was convicted. As a result, there was no question before the Court—and thus no holding—in *Brown* about what happens when the relevant law changes while the state charges were pending. *See United States v. Aguillard, 217 F.3d 1319, 1321 (11th Cir. 2000)* ("The holdings of a prior decision can reach only as far as the facts and circumstances presented to the Court in the case which produced that decision." (citation modified)).

\* \* \*

In sum, the Supreme Court's decisions in *McNeill* and *Brown*, read together, tell us that when a sentencing court applies the categorical approach to determine whether an earlier state drug conviction qualifies as a serious drug offense, a court must look to the version of state law that applied at the time of the defendant's state drug offense, not at the time of his federal firearm offense. In most cases, the state law will not have changed between when the defendant committed the state offense and when he was convicted of it, so it makes

no difference whether a federal sentencing court looks to the state law when the defendant committed or was convicted of the state drug offense.

But when the relevant state law changes during the interval between commission and conviction of the offense, the federal sentencing court must perform a more nuanced analysis. It must consider whether, under state law, the change would apply to the offense. *See McNeill*, 563 U.S. at 824, 131 S.Ct. 2218. Because nearly all states (and the federal government) have adopted general saving provisions, in applying an ACCA enhancement the sentencing court usually will consult the version of the law in effect when the defendant committed the state offense.[12] *See* 1 U.S.C. § 109; *United States v. Santana*, 761 F. Supp. 2d 131, 143–44 (S.D.N.Y. 2011) (explaining that "most states [have] adopted general savings statutes ... while a handful have incorporated savings provisions in their constitutions" (citation modified)); *see also* Comment, Today's Law and Yesterday's Crime: Retroactive Application of Ameliorative Criminal Legislation, 121 U. Pa. L. Rev. 120, 127–28 (1972) (explaining that 42 states have general saving statutes that apply to criminal prosecutions and three states have general saving clauses in their constitutions).

## B. Whether Miller's State Cocaine Convictions Qualify as Serious Drug Offenses Under ACCA

**\*10** At last, we apply these principles to determine whether Miller's state cocaine convictions qualify as serious drug offenses. When he committed these offenses in February and March 2017, Florida law treated ioflupane as a type of cocaine, while federal law did not, meaning that Florida's definition of cocaine did not categorically match federal law. But by the time he was convicted of these offenses in August 2017, Florida had legalized ioflupane, and Florida's definition of cocaine was a categorical match. Unless there is a saving provision in Florida law that sets aside the common law presumption that an amendment narrowing a criminal law applies to pending criminal cases, the amendment to Florida law legalizing ioflupane would apply to Miller's convictions because his criminal cases were pending when

the law changed. *See Bell v. Maryland*, 378 U.S. 226, 232, 84 S.Ct. 1814, 12 L.Ed.2d 822 (1964).[13]

When Miller committed the state cocaine offenses, Florida's constitution had a saving provision providing that amendments to its criminal laws, such as the amendment legalizing ioflupane, did not apply to pending cases. *See* Fla. Const. art. X, § 9 (2017) ("Repeal or amendment of a criminal statute shall not affect prosecution or punishment for any crime previously committed.").[14] Given this constitutional provision, Florida courts have held "that an amendment to a criminal statute does not affect the prosecution of, or the punishment for, a crime committed before the amendment" becomes effective. *State v. Battle*, 661 So. 2d 38, 39 (Fla. Dist. Ct. App. 1995). As a result, for Miller's state cocaine offenses, we look to the version of Florida law "in effect at the time of the commission of" these crimes—that is, the version that treated ioflupane as a type of cocaine.[15] *Id.*

**\*11** Under the categorical approach, we conclude that there was a mismatch between Florida's definition of cocaine, which treated ioflupane as a form of cocaine, and the federal schedules, which did not. Because Miller's offense of conviction was broader than federal law, we hold that his Florida convictions do not qualify as serious drug offenses under ACCA. The district court therefore erred as a matter of law in applying an ACCA enhancement.

## IV. CONCLUSION

For the reasons above, we vacate Miller's sentence and remand to the district court so that he may be resentenced without the ACCA enhancement.

**VACATED AND REMANDED.**

**All Citations**

--- F.4th ----, 2025 WL 3096637

---

**Footnotes**

---

Miller faced separate state court charges for stealing the truck. In those proceedings, he pleaded guilty to grand theft.

In June 2022, Congress raised the statutory maximum sentence to 15 years. *See* Bipartisan Safer Communities Act, Pub. L. No. 117-159, § 12004(c), 136 Stat. 1313, 1329 (2022).

Although Miller objected to the PSR's conclusion that his Florida convictions qualified as ACCA predicates, he did not challenge the portion of the PSR listing the dates when he committed each offense and when he was convicted of each offense. The parties likewise do not challenge these dates on appeal.

Because we conclude that the second part of ACCA's definition of serious drug offense is not satisfied, we do not address the other two parts.

Revised versions of the federal schedules are published in the Code of Federal Regulations, 21 C.F.R. §§ 1308.11–1308.15. *See Jackson*, 55 F.4th at 851 n.5.

As we mentioned above, Congress authorized the Attorney General, through rulemaking, to remove any drug from the schedules. *See* 21 U.S.C. § 811(a)(2). The Attorney General, in turn, delegated this authority to the DEA administrator. *See* 28 C.F.R. § 0.100.

As our above discussion shows, § 893.03(a)(2)(4) lists multiple substances that qualify as "cocaine" (including ecgonine, a stereoisomer of cocaine, a stereoisomer of ecgonine, a derivative of cocaine, or a derivative of ecgonine). *See* Fla. Stat. § 893.03(2)(a)(4). We thus also must consider whether Florida law is further divisible by type of cocaine. We conclude that it is not. Section 893.03(2)(a)(4) sets forth a single "statutory definition of cocaine [that] includes" each of the listed substances. *Chamu v. U.S. Att'y Gen.*, 23 F.4th 1325, 1331 (11th Cir. 2022). This understanding is consistent with decisions from the Florida state courts. *See, e.g.*, *Godfrey v. State*, 947 So. 2d 565, 566–67 (Fla. Dist. Ct. App. 2006). In *Godfrey*, when a defendant was found in possession of both powder cocaine and a derivative of cocaine, he brought a double jeopardy challenge to his convictions. The Florida appellate court concluded that he could not be prosecuted for two separate offenses because § 893.03(2)(a)(4) did not "divide cocaine from its derivatives." *Id.* at 567. Based on *Godfrey*, we conclude that § 893.03(2)(a)(4) sets forth alternative means of committing a cocaine-related offense and is not further divisible by type of cocaine. *See Mathis*, 579 U.S. at 517–18, 136 S.Ct. 2243 (directing that a federal court may look to state court decisions to determine whether listed items in a statute are elements or means); *see also Simpson v. U.S. Att'y Gen.*, 7 F.4th 1046, 1056 (11th Cir. 2021) (looking to Florida state court decisions holding that conduct could result in only a single conviction for double jeopardy purposes to conclude that statutory language set forth alternative means, not elements).

In other cases, defendants have argued that their Florida cocaine convictions do not qualify as serious drug offenses because Florida law treats stereoisomers of cocaine as cocaine, while federal law covers only optical and geometric isomers. *See United States v. Laines*, 69 F.4th 1221, 1233–34 (11th Cir. 2023) (rejecting defendant's stereoisomer argument raised for the first time on appeal and holding that district court did not plainly err in applying ACCA enhancement); *see also Chamu*, 23 F.4th at 1330–31 & n.2 (reviewing meaning of stereoisomers, optical isomers, and geometric isomers). Because Miller has not argued that his Florida cocaine convictions do not qualify as serious drug offenses based on the different treatment of stereoisomers under Florida and federal law, this issue is not before us, and we express no opinion on it.

In *Jackson*, we had held that ACCA incorporated the federal schedules in effect "when the defendant *was convicted* of his prior state drug offense." 55 F.4th at 849 (emphasis added). But, in *Brown*, the Supreme Court described our decision in *Jackson* as holding that a court uses the federal schedules in place "when the defendant *committed* the state offense"—without acknowledging any difference between the date of

commission of the offense and the date of conviction. *Brown*, 602 U.S. at 108, 144 S.Ct. 1195 (emphasis added).

For the sake of completeness, we note that the Supreme Court also considered a third approach, offered by Brown: that a sentencing court should consult the federal schedules in effect when the defendant was *sentenced* for the federal firearm offense. *See Brown*, 602 U.S. at 110, 144 S.Ct. 1195. The Court roundly rejected this approach. *See id.* at 110–11, 119–20, 144 S.Ct. 1195; *see also id.* at 127 n.1, 144 S.Ct. 1195 (Jackson, J., dissenting) (also rejecting this approach). Because there has been no suggestion in this case that a sentencing court should consult the state schedules in effect when the defendant was sentenced for the state offense, we discuss this approach no further.

Under the common law, the default rule is that a repeal or an amendment narrowing a criminal law applies to any criminal case that was pending when the law changed. *See Bell v. Maryland*, 378 U.S. 226, 230, 84 S.Ct. 1814, 12 L.Ed.2d 822 (1964) ("[W]hen the legislature repeals a criminal statute or otherwise removes the State's condemnation from conduct that was formerly deemed criminal, this action requires the dismissal of a pending criminal proceeding charging such conduct."). Notwithstanding the common law default rule, a saving clause in legislation may direct that a repeal of or amendment to a criminal statute does not apply to pending criminal cases. *See id.* at 232, 84 S.Ct. 1814 (explaining that such a provision " 'saves' state convictions from the common-law effect of supervening enactments"); *see also Bradley v. United States*, 410 U.S. 605, 608, 93 S.Ct. 1151, 35 L.Ed.2d 528 (1973) (providing background on saving clauses).

To put it more succinctly, in most cases a federal sentencing court applying the categorical approach will look to the version of state law in effect when the defendant committed the state offense. But this will not be so if the state law changed between when the defendant committed the offense and when he was convicted of it, the change narrowed state law, and state law has no saving provision.

We note that this case does not present a circumstance in which a state removed a substance from its drug schedules and made that change retroactively applicable to defendants previously convicted and sentenced for that offense. We express no opinion about which version of state law we would consult for ACCA purposes in that circumstance. *See McNeill*, 563 U.S. at 825 n.1, 131 S.Ct. 2218 (declining to answer a similar question).

After Miller committed, was convicted of, and was sentenced for the state cocaine offenses, Florida amended the saving provision in its state constitution. It now states that the "[r]epeal of a criminal statute shall not affect prosecution for any crime committed before such repeal." Fla. Const. art. X, § 9; *see Jimenez v. Jones*, 261 So. 3d 502, 504 (Fla. 2018) (explaining that after the amendment's effective date on January 8, 2019, there was no longer "any provision in the Florida Constitution that would prohibit the [Florida] Legislature from applying an amended criminal statute retroactively to pending prosecutions or sentences"). After the amendment, Florida's legislature enacted a new saving clause, which went into effect on June 7, 2019. *See* 2019 Fla. Leg. Sess. Laws Serv. ch. 2019-63. The new saving clause states that an "amendment of a criminal statute" generally "operates prospectively" and does not abate "[a] violation of the statute based on any act or omission occurring before the effective date of the act." Fla. Stat. § 775.022(3)(b). But if the new legislation reduces a "penalty, forfeiture, or punishment for a violation of a criminal statute," then "the penalty, forfeiture, or punishment, if not already imposed, must be imposed according to the statute as amended." *Id.* § 775.022(4).

The new saving clause does not apply to defendants, like Miller, who were sentenced before it went into effect on June 7, 2019. *See Garnes v. State*, 382 So. 3d 701, 707 (Fla. Dist. Ct. App. 2024); *Pappas v. State*, 346 So. 3d 1200, 1202 (Fla. Dist. Ct. App. 2022); *Dean v. State*, 303 So. 3d 257, 259 (Fla. Dist. Ct. App. 2020); *Stapleton v. State*, 286 So. 3d 837, 839 (Fla. Dist. Ct. App. 2019).

15      We recognize that the saving provision in *McNeill* appeared in the specific bill that reduced the penalty range for cocaine offenses. See 563 U.S. at 824, 131 S.Ct. 2218 (citing 1993 N.C. Sess. Laws, ch. 538 § 56). In contrast, Florida's general saving provision appeared in its state constitution, *see* Fla. Const. art. X, § 9 (2017), rather than in the statute that legalized ioflupane, *see* 2017 Fla. Leg. Sess. Laws Serv. ch. 2017-110 § 1. But this distinction makes no difference. As the Supreme Court long ago recognized, a saving provision in the specific repealing or amending statute has the same effect as a general saving provision. *See United States v. Reisinger*, 128 U.S. 398, 401, 9 S.Ct. 99, 32 L.Ed. 480 (1888).

**End of Document**                                         © 2025 Thomson Reuters. No claim to original U.S. Government Works.