# FEDERAL PUBLIC DEFENDER
## Southern District of Florida
www.fpdsouthflorida.org

**Hector A. Dopico**
**Federal Public Defender**

Location: <u>Miami</u>

**Helaine B. Batoff**
**Chief Assistant**

<u>Miami:</u>

**Abigail Becker**
**Christian Dunham**
**R. D'Arsey Houlihan**
**Bunmi Lomax**
   **Supervising Attorneys**

Helene Barthelemy
Sowmya Bharathi
Elizabeth Blair
Eboni Blenman
Micki Bloom
Anshu Budhrani
Paul Carson
Michael Caruso
Eric Cohen
Tracy Dreispul
MaeAnn Dunker
Daniel L. Ecarius
Sogol Ghomeshi
Jean-Pierre Gilbert
Alexandra Hoffman
Srilekha Jayanthi
Ashley Kay
Evan Kuhl
Ian McDonald
Kate Mollison
Leticia Olivera
Marisa Taney
Kate Taylor
Victor Van Dyke

<u>Ft. Lauderdale:</u>

**Jan C. Smith,**
   **Branch Supervisor**
**Bernardo Lopez,**
   **Supervising Attorney**

Andrew Adler
Huda Ajlani-Macri
Lori Barrist
Janice Bergmann
Brenda G. Bryn
Allari Dominguez
Margaret Y. Foldes
Kyle Gaines
Sara Kane
Ta'Ronce Stowes
Wesley Wallace

<u>West Palm Beach:</u>

**Peter Birch,**
   **Branch Supervisor**

Scott Berry
Caroline McCrae
Kristy Militello

<u>Fort Pierce:</u>

Kafahni Nkrumah
Renee Sihvola

July 10, 2026

The Honorable Jill Pryor
The Honorable Robert Luck
The Honorable Virginia Covington
United States Court of Appeals for the Eleventh Circuit
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

Re:     *United States v. Gilbert*, No. 20-12010
        Oral Argument Heard September 18, 2025
        Letter of Supplemental Authority, Fed. R. App. P. 28(j)

Dear Judge Pryor, Judge Luck, and Judge Covington:

In *United States v. Carter*, __ F.4th __, 2026 WL 1944039 (11th Cir. July 6, 2026), this Court analyzed whether Georgia state cocaine-related prior convictions qualify as serious drug offenses under the Armed Career Criminal Act ("ACCA"). The Court explained the issue as a syllogism:

> Major premise: Prior convictions for violating a state's drug laws involving cocaine do not count under the ACCA if state law defines "cocaine" more broadly than federal law does.

> Minor premise: Georgia law's definition of cocaine is broader than the federal definition of cocaine.

> Conclusion: Therefore, Carter's four prior Georgia convictions for cocaine crimes do not count under the ACCA.

*Id.* at *3.

---

| **Miami** | **Ft. Lauderdale** | **West Palm Beach** | **Ft. Pierce** |
|---|---|---|---|
| 150 West Flagler Street | One East Broward Boulevard | 250 South Australian Avenue | 109 North 2nd Street |
| Suite 1700 | Suite 1100 | Suite 400 | Ft. Pierce, FL 34950 |
| Miami, FL 33130-1555 | Ft. Lauderdale, FL 33301-1842 | West Palm Beach, FL 33401-5040 | Tel: (772) 489-2123 |
| Tel: (305) 530-7000 | Tel: (954) 356-7436 | Tel: (561) 833-6288 | Fax: (772) 489-3997 |
| Fax: (305) 536-4559 | Fax: (954) 356-7556 | Fax: (561) 247-7094 | |

The Court found that the "structural logic . . . is valid," and "[t]he major premise is correct[.]" *Id.* at \*3–4.

The Court concluded, however, that the minor premise—that Georgia law defines cocaine more broadly than federal law does—was incorrect. *Id.* at \*4.

This is because, under Georgia state law, for a drug to qualify as a controlled substance, it must be on **both** the Georgia schedule **and** the federal schedule. *Id.* at \*5. Thus, the apparent mismatch between Georgia's cocaine definition (all stereoisomers) [1] and the federal definition (just optical and geometric isomers) is erased.

As the government explained during the *Carter* Oral Argument, however, "Georgia **is alone among the states in our Circuit**" in limiting its own definition of controlled substances in this way; "**Florida doesn't do it**." [2]

So, unlike in Georgia, the "minor premise" here is **true**: Florida's definition of cocaine is broader than the federal definition of cocaine. Thus, following *Carter,* Mr. Gilbert's "prior [Florida] convictions for cocaine crimes do not count under the ACCA." *Id.* at \*3.

Respectfully submitted,

HECTOR A. DOPICO
FEDERAL PUBLIC DEFENDER

*/s/ Kate Taylor*
Kate Taylor
Assistant Federal Public Defender

cc: AUSA Alexandra Bailey

---

[1] The Court noted that according to Carter's expert, Dr. Garg, there exist stereoisomers of cocaine that are not optical or geometric isomers. *Id.* at \*2–3. A copy of the Garg declaration was attached to Mr. Gilbert's September 12, 2025, 28(j) Letter of Supplemental Authority (ECF No. 78).

[2] Carter Oral Argument at 20:04–20:19, available at https://www.ca11.us courts.gov/sites/default/files/oral_argument_recordings/23-13430_03252025_0.mp3.

2026 WL 1944039
Only the Westlaw citation is currently available.
United States Court of Appeals, Eleventh Circuit.

UNITED STATES of America, Plaintiff-Appellee,

v.

Emory Austin CARTER, Defendant-Appellant.

No. 23-13430
|
Filed: 07/06/2026

**Synopsis**

**Background:** Defendant was convicted on guilty plea in the United States District Court for the Middle District of Georgia, No. 7:22-cr-00058-HL-TQL-1, Hugh Lawson, Senior District Judge, of possession of firearm by convicted felon and was sentenced as armed career criminal under Armed Career Criminal Act (ACCA) based on four prior Georgia convictions for sale of controlled substance, namely, cocaine, and possession with intent to distribute cocaine. Defendant appealed.

The Court of Appeals, E. Carnes, Circuit Judge, held that prior Georgia convictions for sale of controlled substance, namely, cocaine, and possession with intent to distribute cocaine were "serious drug offenses" that subjected defendant to mandatory minimum sentencing under ACCA.

Affirmed.

**Procedural Posture(s):** Appellate Review; Sentencing or Penalty Phase Motion or Objection.

Appeal from the United States District Court for the Middle District of Georgia, D.C. Docket No. 7:22-cr-00058-HL-TQL-1

**Attorneys and Law Firms**

Stuart E. Walker, U.S. Attorney Service-Middle District of Georgia, DOJ-USAO, Macon, GA, for Plaintiff-Appellee.

Emory Austin Carter, Coleman, FL, Pro Se.

Jonathan Dodson, Federal Defender Organization-Middle District of Georgia, Federal Public Defender's Office, Macon, GA, for Defendant-Appellant.

Before Jill Pryor, Branch, and Ed Carnes, Circuit Judges.

**Opinion**

Ed Carnes, Circuit Judge:

**\*1** Emory Austin Carter pleaded guilty to possessing a firearm as a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). At sentencing his four prior Georgia convictions, each involving cocaine distribution crimes, were classified as "serious drug offenses" that triggered a 15-year mandatory minimum sentence under the Armed Career Criminal Act (ACCA). *See* 18 U.S.C. § 924(e).

Carter challenges the ACCA sentence enhancement on two grounds. Both depend on his assertion that Georgia's definition of cocaine is broader than the federal definition of it. [1]

**I. Facts and Procedural History**

Carter was indicted on one count of possessing a firearm as a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). Section 924(e)(1) requires a 15-year mandatory minimum sentence when a person convicted of a § 922(g) offense has at least three qualifying prior convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another." *Id.* § 924(e)(1).

The indictment alleged that Carter had four prior serious drug offense convictions under Georgia law and that the offenses had been committed on occasions different from one another. According to the indictment, Carter had been convicted of these four crimes:

(1) Sale of cocaine, committed Oct. 8, 2005, and convicted July 11, 2006

(2) Sale of cocaine, committed Dec. 14, 2012, and convicted Jan. 9, 2014

(3) Sale of cocaine, committed Dec. 21, 2012, and convicted Jan. 9, 2014

(4) Possession with intent to distribute cocaine, committed Jan. 21, 2016, and convicted Oct. 6, 2016

Carter pleaded guilty to the federal charge as a felon in possession of a firearm. He also admitted to the four prior

drug convictions under Georgia law as they were alleged in the indictment. All four of Carter's predicate convictions were based on violations of O.C.G.A. § 16-13-30, which makes it a crime "to manufacture, deliver, distribute, dispense, administer, sell, or possess with intent to distribute any controlled substance." [2] O.C.G.A. § 16-13-30(b). The court accepted Carter's guilty plea and entered a judgment of conviction.

**\*2** Carter's presentence investigation report (PSR) classified his four prior cocaine distribution offenses (the four listed above) as "serious drug offense[s]" as the term is used in the ACCA. Because of that, under U.S.S.G. § 4B1.4(a), the PSR classified him as an "armed career criminal." That classification resulted in a base offense level of 33. [3] *See* 18 U.S.C. § 924(e)(1); U.S.S.G. § 4B1.4(b)(3)(B).

Three levels were shaved off for accepting responsibility and pleading guilty, making his total offense level 30. With a criminal history of VI, his guidelines range would have been 168 to 210 months of imprisonment, but the ACCA's 15-year mandatory minimum increased the low end of it by twelve months, and his range became 180 to 210 months.

Carter objected to the PSR, arguing that he shouldn't be classified as an armed career criminal under U.S.S.G. § 4B1.4 and 18 U.S.C. § 924(e) because Georgia's definition of cocaine was categorically broader than the federal definition of it.

When Carter committed his O.C.G.A. § 16-13-30 cocaine distribution crimes, Georgia defined "cocaine" as:

> [C]oca leaves, any salt, compound, derivative, stereoisomers of cocaine, or preparation of coca leaves, and *any* salt, compound, derivative, *stereoisomers of cocaine*, or preparation thereof which is chemically equivalent or identical with any of these substances, but not including decocainized coca leaves or extractions which do not contain cocaine or ecgonine.

O.C.G.A. § 16-13-26(1)(D) (emphasis added).

At the same time, federal law defined cocaine as "[c]oca leaves, except coca leaves and extracts of coca leaves from which cocaine, ecgonine, and derivatives of ecgonine or their salts have been removed," 21 U.S.C. § 802(17)(C), and as "salts, *optical and geometric isomers*, and salts of isomers" of cocaine, *id.* § 802(17)(D) (emphasis added).

Carter's argument focused on the difference between the "*any ...* stereoisomers" in Georgia's definition of cocaine, O.C.G.A. § 16-13-26(1)(D) (emphasis added), and the more specific "optical and geometric isomers" in the federal definition, 21 U.S.C. § 802(17)(D). He asserts that the language "any ... stereoisomers" includes more than just optical and geometric isomers.

To support his position that this definitional difference makes a difference, he included a declaration from an expert he had hired, chemistry professor Neil Garg. In his declaration, Garg explains that "cocaine is often formulated with different adulterants or diluents." And "[a]dulterants, diluents, or impurities can be expected to impact a compound's conformation, leading to conformational isomers." Garg's declaration focuses on these "conformational isomers," which he defines as a "class of stereoisomer[ ]" of cocaine that does in fact exist. He explains that conformational isomers are chemical compounds that differ "in torsion angle or angles" from other stereoisomers. And he describes conformational isomers as "a third form of stereoisomer that is distinct from optical and geometric isomers of cocaine." Optical isomers, according to Garg, are compounds whose structures mirror one another's, and geometric isomers are compounds that differ in terms of the positions of their atoms relative to the reference plane. [4]

**\*3** Garg's declaration points out that the federal definition of cocaine includes only "optical and geometric isomers" of cocaine while the Georgia definition includes all "stereoisomers of cocaine." And while he admits that he isn't able to "comment on the legal ramifications of conformational isomers with regard to cocaine," his opinion is that "different adulterants or diluents" in cocaine result in "differing levels of purity," which can create conformational isomers of the drug. All of that leads Garg to conclude that, "the Georgia definition, which includes all 'stereoisomers of cocaine,' may be broader than the federal definition," which includes only geometric and optical isomers. He did say "may be," not is. And he is a chemistry professor, not someone with any expertise interpreting or applying statutes or court decisions.

Based on Garg's report, Carter objected to the ACCA enhancement recommended in the PSR. The probation officer responded by adding an addendum to the report stating that the Georgia and federal definitions of cocaine "appear[ed] to align." The addendum also explained, however, that if the court agreed with Carter that the ACCA enhancement didn't apply, he would not be subject to a mandatory minimum sentence of 15 years, and his guidelines range would be 77–96 months based on a total offense level of 21 and a criminal history category of VI.

At the sentence hearing, Carter's counsel reiterated the objection to the application of the ACCA enhancement based on Garg's declaration, arguing that the Georgia definition of cocaine was broader than the federal definition. The court overruled Carter's objection, concluding that the ACCA enhancement applied.

The district court accepted the PSR and its recommended guidelines range of 180–210 months of imprisonment. It sentenced Carter to 210 months to run consecutively to the state court sentences he was serving for probation violations. The court explained that it chose that sentence "to adequately reflect the nature of [Carter's] criminal history, promote respect for the law, afford adequate deterrence, and protect the public from further crimes [he] might commit."

The court asked Carter (personally, not through counsel) if he objected to the sentence, and Carter said he felt he had been "over-sentenced." The court told him that he had an "extensive criminal record," he had committed the current offense while on probation for other crimes, and nothing his counsel had said justified or excused Carter's actions. The court said: "Your situation is such that every time you break the law and are caught, and if you plead guilty and/or are found guilty and are sentenced, your sentences are going to get longer and longer and longer." Carter's counsel objected to the procedural and substantive reasonableness of the sentence.

## II. Discussion

Carter contends here, as he did in the district court, that with Garg's declaration, he has established that Georgia's definition of cocaine is broader than the federal definition of it. On that basis he insists that his Georgia cocaine distribution convictions cannot count as "serious drug offenses," and the ACCA sentence enhancement cannot apply to him. He doesn't write it out this way, but the syllogism of his argument is:

> Major premise: Prior convictions for violating a state's drug laws involving cocaine do not count under the ACCA if state law defines "cocaine" more broadly than federal law does.

> Minor premise: Georgia law's definition of cocaine is broader than the federal definition of cocaine.

> Conclusion: Therefore, Carter's four prior Georgia convictions for cocaine crimes do not count under the ACCA.

The structural logic of that syllogism is valid, meaning that the conclusion does follow from the premises. But the syllogism is unsound, and hence unpersuasive, because the minor premise is false.

**\*4** The major premise is correct about the way the ACCA generally works. If Carter's Georgia convictions are based on laws that criminalize more conduct than the federal law counterpart does, those convictions cannot serve as predicate offenses for an ACCA mandatory minimum sentence. *See United States v. Jackson,* 55 F.4th 846, 850 (11th Cir. 2022), *aff'd sub nom.*, *Brown v. United States*, 602 U.S. 101, 144 S.Ct. 1195, 218 L.Ed.2d 583 (2024). That's settled.

It is also settled that Georgia law sets the metes and bounds of the conduct covered by, and hence criminalized by, Georgia criminal statutes. *See id.* (explaining that "federal law binds our construction of ACCA, and state law governs our analysis of elements of state-law crimes"). Georgia law is what the Georgia appellate courts say it is. *See EmbroidMe.com, Inc. v. Travelers Prop. Cas. Co. of Am.*, 845 F.3d 1099, 1105 (11th Cir. 2017) ("When we address issues of state law, we are therefore bound by decisions issued by that state's appellate courts."); *see also Mullaney v. Wilbur*, 421 U.S. 684, 691, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) (explaining that the Supreme Court "repeatedly has held that state courts are the ultimate expositors of state law"); *Pinkney v. Secretary, DOC*, 876 F.3d 1290, 1299 (11th Cir. 2017) ("[S]tate law is what the state courts say it is. As the Supreme Court and this Court have repeatedly acknowledged, it is not a federal court's role to examine the propriety of a state court's determination of state law.") (citation omitted); *In re Cassell*, 688 F.3d 1291, 1292 (11th Cir. 2012) (recognizing that the state supreme court is "the one true and final arbiter" of state law); *United States v. Rosales-Bruno*, 676 F.3d 1017, 1021 (11th Cir. 2012) ("[W]e

are bound by [state] courts' determination and construction of the substantive elements of th[e] state offense.").

Carter's minor premise is wrong about Georgia law regarding cocaine crimes. For reasons we will explain, he could not have been prosecuted under Georgia law for cocaine distribution crimes if the substance involved didn't also meet the federal definition of cocaine.

### A. *The ACCA, Georgia's Definition of a Controlled Substance, and Carter's Serious Drug Offenses*

Whether a conviction qualifies as a serious drug offense under the ACCA is a question of law that we review *de novo*. *See United States v. White*, 837 F.3d 1225, 1228 (11th Cir. 2016). Federal law governs our interpretation of the ACCA, but as we've mentioned, state law defines the elements of a state-law crime. *Jackson*, 55 F.4th at 850.

Under the ACCA, a state conviction counts as a "serious drug offense" when it "involv[es] manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance" as defined on the federal drug schedule, 21 U.S.C. § 802, and also carries "a maximum term of imprisonment of ten years or more." 18 U.S.C. § 924(e)(2)(A)(ii). We use what's known as the categorical approach to determine whether a defendant's prior state conviction qualifies as a serious drug offense under the ACCA. *Jackson*, 55 F.4th at 850. "[A] state conviction cannot serve as an ACCA predicate offense if the state law under which the conviction occurred is categorically broader—that is, if it punishes more conduct—than [the] ACCA's definition of a 'serious drug offense.' " *Id.*

When comparing the state conviction to the ACCA's definition of a "serious drug offense," we look at the statutory definition of the state offense and not at the facts of the crime. *Id.* A state drug offense is "an ACCA predicate only if," at the time the defendant committed his state-law drug crime, "the State's definition of the drug in question matches the definition under federal law." *Brown*, 602 U.S. at 123, 144 S.Ct. 1195 (alteration adopted and quotation marks omitted); *see Jackson*, 55 F.4th at 850 (explaining that a prior conviction qualifies only if the state statute of conviction defines the offense in the same way as, or more narrowly than, the ACCA's definition of a serious drug offense). To count as an ACCA predicate conviction, "the least culpable conduct prohibited under the state [statute] must qualify as a predicate offense, and all the controlled substances covered by the state [statute] must also be controlled substances under federal law." *United States v. Laines*, 69 F.4th 1221, 1233 (11th Cir. 2023).

**\*5** But even assuming that Carter has shown a mismatch — that Georgia's definition of cocaine was broader than the federal definition of the drug when he committed his cocaine distribution crimes in Georgia — in this situation, it doesn't matter for purposes of the ACCA enhancement. Here's why.

As mentioned, all four of Carter's convictions for cocaine distribution crimes in Georgia were violations of O.C.G.A. § 16-13-30, which makes it "unlawful for any person to manufacture, deliver, distribute, dispense, administer, sell, or possess with intent to distribute any controlled substance." O.C.G.A. § 16-13-30(b). The Georgia Controlled Substances Act defines a "controlled substance" as "a drug, substance, or immediate precursor in Schedules I through V of Code Sections 16-13-25 through 16-13-29 *and* Schedules I through V of 21 C.F.R. Part 1308." O.C.G.A. § 16-13-21(4) (emphasis added). The "and" is important.

The Court of Appeals of Georgia has concluded that the "plain language" of that Georgia statute dictates that "a drug is a 'controlled substance' as defined in OCGA § 16-13-21 *only* if it is listed as such in both Georgia *and* federal schedules." *C.W. v. Dep't of Human Servs.*, 353 Ga.App. 360, 836 S.E.2d 836, 837 (Ga. Ct. App. 2019) (first emphasis added). That means a drug isn't a "controlled substance" under Georgia law unless it is a controlled substance under federal law. [5] If the Georgia schedules more broadly define cocaine and its isomers than the federal schedules do, then any cocaine isomer not listed in the federal schedules isn't a controlled substance as a matter of Georgia law, and Carter wouldn't have been convicted for selling or possessing cocaine with the intent to distribute it.

In *Duenas-Alvarez* the Supreme Court explained:

> [T]o find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute's language. It requires a realistic probability, not a theoretical possibility, that the State would apply

its statute to conduct that falls outside the generic definition of a crime.

**\*6** *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193, 127 S.Ct. 815, 166 L.Ed.2d 683 (2007). We've recognized that "[t]he simplest way" for a defendant to show a realistic probability that a state statute would be applied to conduct falling outside the definition of the federal crime "is to point to a case in which the state statute was used to prosecute such conduct." *Chamu v. U.S. Att'y Gen.*, 23 F.4th 1325, 1330 (11th Cir. 2022).

But that's not the only way, according to our precedent. *See id.* We've held that "an offender need not produce a sample prosecution 'when the statutory language itself, rather than the application of legal imagination to that language, creates the realistic probability that a state would apply the statute to conduct beyond the generic definition.' " *Id.* (quoting *Ramos v. U.S. Att'y Gen.*, 709 F.3d 1066, 1072 (11th Cir. 2013)). Even so, it's still necessary to "show that any textual differences carry actual legal consequences." *Id.* "[W]hen a state statute with different terminology is nonetheless no broader than the federal standard—no realistic probability of broader prosecution exists." *Id.* (quotation marks omitted). We emphasized in *Chamu* that "[d]ifferent words alone are not enough." *Id.*

What we have in this case isn't enough for Carter to prevail. *See id.* Even assuming that he has established some "textual differences" in the federal and Georgia definitions of cocaine, there is no possibility of "actual legal consequences" under state law based on any difference in the definitions. *See id.* That's because, as the code provision plainly states and the Court of Appeals of Georgia has authoritatively decided, as a matter of state law, cocaine that is not on the federal schedules is not a "controlled substance" in Georgia. *See* O.C.G.A. § 16-13-21; *C.W.*, 836 S.E.2d at 837.

We recognize that *Duenas-Alvarez*, *Chamu*, and *Ramos* are all immigration law decisions involving petitioners who bore the burden of establishing their entitlement to relief. *See Duenas-Alvarez*, 549 U.S. at 191, 127 S.Ct. 815 (discussing what Duenas–Alvarez had to show in order to establish entitlement to relief); *Chamu*, 23 F.4th at 1331 (recognizing petitioner Chamu's burden and concluding that he failed to meet it); *Ramos*, 709 F.3d at 1071–72 (recognizing a petitioner's burden and concluding that the plain language of the statute under which Ramos was convicted "create[d] the 'realistic

probability' " that his prior conviction for shoplifting didn't qualify as an "aggravated felony").

In the present case, by contrast, the government bore the burden at sentencing to show that Carter was subject to an ACCA enhancement. *See United States v. Harris*, 941 F.3d 1048, 1051 (11th Cir. 2019) ("The government bears the burden of establishing that an ACCA sentencing enhancement is warranted."). But Carter does not contend that the government failed to establish the fact that he has four prior Georgia convictions for cocaine distribution crimes and that they occurred on separate occasions. *See supra* n.2. That's undisputed.

Regardless of the party shouldering the burden, in this case the Georgia statute and the *C.W.* decision interpreting it establish that there's no possibility, much less a "realistic probability," *Duenas-Alvarez*, 549 U.S. at 193, 127 S.Ct. 815; *Chamu*, 23 F.4th at 1330, *Ramos*, 709 F.3d at 1072, that Carter was convicted of drug distribution crimes based on cocaine containing conformational isomers not on the federal drug schedule. If cocaine with conformational isomers isn't on the federal drug schedules — and Carter insists that it isn't — then cocaine with conformational isomers is not a controlled substance under Georgia law, and it couldn't have been the basis for any of Carter's prior controlled substance distribution convictions. *See* O.C.G.A. § 16-13-30(b); *id.* § 16-13-21; *C.W.*, 836 S.E.2d at 837.

### B. *Our Precedent Forecloses Carter's Other Definition-Based Argument*

**\*7** Carter also argues that the inclusion of "ioflupane" in Georgia's definition of cocaine mismatches Georgia drug convictions with the ACCA "serious drug offense" requirement.

The basis for that argument is that in 2015 the federal drug schedules changed to exclude ioflupane. But three of Carter's ACCA predicate drug offenses were committed in 2005 and 2012, which is before ioflupane was excluded from the federal drug schedules. And the ACCA requires only three qualifying prior convictions, not four. *See* 18 U.S.C. § 924(e).

To get around that problem, Carter wants us to consider only the federal schedules in effect at the time he was sentenced for his § 922(g) felon-in-possession offense in 2023. We can't. Binding precedent requires us to look to the federal

schedules in effect when the defendant committed his state drug offense to determine whether his prior crime is a "serious drug offense" under the ACCA. *See Brown*, 602 U.S. at 123, 144 S.Ct. 1195. That forecloses Carter's argument.

Carter's ioflupane argument also fails for the same reason his argument about conformational isomers fails. *See supra* at ____ – ____.

**AFFIRMED.**

**All Citations**

--- F.4th ----, 2026 WL 1944039

---

## Footnotes

1  Carter also challenges his conviction for possessing a firearm as a felon, contending that 18 U.S.C. § 922(g)(1) violates the Second Amendment. We will not mention it further because our precedent forecloses that contention. *See United States v. Hicks*, 166 F.4th 933, 939 (11th Cir. 2026); *United States v. Dubois*, 139 F.4th 887, 889 (11th Cir. 2025), *cert. denied*, 2026 WL 135685, ——— U.S. ———, ——— S.Ct. ———, 223 L.Ed.2d 570 (U.S. Jan. 20, 2026).

2  There's no dispute about the fact of these convictions and the fact that the crimes that led to them occurred on different occasions, which are 18 U.S.C. § 924(e)(1) requirements. The only issue is whether they are "serious drug offense[s]." *See* 18 U.S.C. § 924(e)(1). For the sake of simplicity, even though one of them is the crime of possession with intent to distribute, we refer to them collectively as cocaine distribution offenses because in the same statutory provision Georgia criminalizes distribution of controlled substances and possession of a controlled substance with the intent to distribute. *See* O.C.G.A. § 16-13-30(b).

3  The PSR first calculated a base offense level of 24 under § 2K2.1(a)(2) because Carter had at least two prior felony "controlled substance offense[s]." But under U.S.S.G. § 4B1.4(a), "[a] defendant who is subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e) is an armed career criminal." Armed career criminals are assigned a higher base offense level under the guidelines. *See* U.S.S.G. § 4B1.4(a)–(b). As we've mentioned, Carter was assigned a base offense level of 33 because he was classified as an armed career criminal. His guidelines calculations were based on that number. Because we conclude that the district court properly applied the ACCA sentence enhancement, we need not and do not address Carter's arguments about the applicability of U.S.S.G. § 2K2.1(a)(2).

4  Garg notes that the International Union of Pure and Applied Chemistry considers the terms "optical" and "geometric" isomers "obsolete." But those terms appear in the federal definition of cocaine. *See* 21 U.S.C. § 802(17)(D).

5  *C.W.* is a decision of the Court of Appeals of Georgia, and because there is no indication that the Supreme Court of Georgia would interpret O.C.G.A. § 16-13-21 any differently, we are bound by the *C.W.* decision's interpretation of it. *See King v. Ord. of United Com. Travelers of Am.*, 333 U.S. 153, 158, 68 S.Ct. 488, 92 L.Ed. 608 (1948) (holding that on questions of state law "federal courts are bound by decisions of a state's intermediate appellate courts unless there is persuasive evidence that the highest state court would rule otherwise"); *United States v. Hill*, 799 F.3d 1318, 1322–23 (11th Cir. 2015) (following for ACCA purposes a state intermediate court's decision about "the elements of the underlying state offense" because there was no "persuasive indication that the highest court of the state would decide the issue differently") (quotation marks omitted); *see also CSX Transp., Inc. v. Gen. Mills, Inc.*, 82 F.4th 1315, 1326 n.6 (11th Cir. 2023) ("Absent certainty from the state's highest court, we apply the decisions of the state's intermediate court—here, the

Georgia Court of Appeals—unless there is persuasive indication that the Georgia Supreme Court would rule otherwise.") (alteration adopted and quotation marks omitted); *Flintkote Co. v. Dravo Corp.*, 678 F.2d 942, 945 (11th Cir. 1982).

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.